# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                    :        Chapter 7
                                         :
ERIC E. POWELL,                          :        Bankruptcy No. 05-11345JKF
                                         :
    Debtor.              :

_____

ERIC POWELL,                             :        Adversary No. 05-0120
                                         :
    Plaintiff,           :
                                         :
v.                                       :
                                         :
JAY BEST, TRUSTEE,                       :
                                         :
    Defendant.           :

_____

## Memorandum Opinion

Before me is the motion for summary judgment ("SJ Motion") of defendant,

Jay Best, Trustee ("Best"), pursuant to Fed.R.Civ.P. 56(c).[1] Best contends this Court

lacks subject matter jurisdiction over this adversary proceeding because the matter

falls within the probate exception to federal court jurisdiction.[2] Debtor, Eric Powell

---

[1] Rule 56 is applicable to this proceeding pursuant to Fed.R.Bankr.P. 7056.

[2] Neither party has requested this Court to exercise discretionary abstention over Debtor's claim. However, discretionary abstention may be raised sua sponte. See Greene v. Wilson-Greene, 1999 WL 689711, at *3 (E.D. Pa. Sept. 7, 1999) (citing Matter of Gober, 100 F.3d 1195, 1207 n.10 (5th Cir. 1996)).

(continued...)

("Debtor"), opposes the motion, asserting that his complaint ("Complaint") states a

claim for tortious interference with an inheritance which falls squarely outside of the

probate exception.[3] Upon consideration, I conclude that the probate exception does

not apply to a determination of the validity of the trust, which determination may be

all that is necessary to conclude this adversary proceeding and, consequently, that

I have subject matter jurisdiction over it.

---

[2](...continued)
Upon consideration of the issue and the factors that are relevant thereto, see
e.g., Asousa Partnership v. Pinnacle Foods, Inc. (In re Asousa Partnership), 276
B.R. 55, 74-75 (Bankr. E.D. Pa. 2002) (listing factors that are relevant to a
determination of whether to exercise discretionary abstention), I decline to
exercise my discretion to abstain. Debtor's Chapter 13 Plan is dependent upon
the success of his ability to succeed in this adversary proceeding and it is ready
for trial in this Court; consequently, abstention over this matter will negatively
impact the efficient administration of his estate. Moreover, this litigation will not
be a burden on this Court's docket and there is no evidence that Debtor was
forum shopping in filing his claim here as opposed to the Orphan's Court.

[3] The Complaint requests that the Court invalidate a trust agreement
concerning certain real property and place title in that property in the Debtor as
having passed to him through his father's will. At the hearing on this matter on
July 6, 2006, Debtor requested, in the event subject matter jurisdiction is held to
be lacking, that any dismissal be without prejudice or that he be granted leave to
amend the Complaint under Fed.R.Civ.P. 15, incorporated herein by
Fed.R.Bankr.P. 7015, to specifically state a claim for tortious interference with an
inheritance (assuming that he had not done so) which would, he asserts, be
within the Court's subject matter jurisdiction.

## BACKGROUND[4]

In 1987, Debtor's father ("Father") and his wife purchased a property at 1229 President Street, Unit A-1, Brooklyn, New York (the "New York Property"). On November 28, 1995, Debtor's father ("Father") signed his Last Will and Testament ("the Will") naming Debtor as the executor of his estate and, in the event his wife predeceased him, as his sole heir.[5] See Exhibit B to Motion. On April 29, 1998, Father allegedly executed a Special Power of Attorney authorizing the Debtor to execute any instruments on his behalf.[6]  Complaint ¶6.  Father's wife died in

_____

[4] Pursuant to the parties' consent at the hearing, the record on the Motion includes the exhibits attached to Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("SJ Memorandum"), Plaintiff's Memorandum of Law in Opposition to the Motion of the Defendant for Summary Judgment in his Favor (the "Response") and Defendant's Reply Memorandum in Support of Summary Judgment (the "Reply").

I have also taken judicial notice of the dockets and undisputed facts in the Schedules and Statement of Financial Affairs from the Debtor's bankruptcy cases. Courts are permitted to take judicial notice of the docket and content of bankruptcy schedules for the purpose of ascertaining the timing and status of events in a debtor's bankruptcy case and facts not reasonably in dispute. See Fed.R.Evid. 201, incorporated into this proceeding pursuant to Fed.R.Bankr.P. 9017. See In re Indian Palms Associates, Ltd., 61 F.3d 197, 204-206 (3d Cir. 1995); Asousa Partnership v. Manufacturers Alliance Insurance Co. (In re Asousa Partnership), 2005 WL 2857983, at *4 n.9 (Bankr. E.D. Pa. 2005).

[5] Father named his wife as his sole heir.  However, in the event his wife predeceased him, Father named Debtor as his sole heir.  See Exhibit B to SJ Memorandum.  In the event both his wife and Debtor predeceased him, Father named Debtor's sister, Nina Cohen ("Nina"), as his sole heir.  See Id.

[6] At Debtor's deposition, he testified that his Father was incompetent when he signed the Special Power of Attorney.  See Exhibit G to Reply.  Whether

(continued...)

December of 1998. Complaint & Answer and Affirmative Defenses of Defendant Jay Best to the Adversary Complaint of Plaintiff, Eric Power ("Answer") at ¶7. On March 22, 2001, Father signed an Agreement and Declaration of Trust (the "Trust") transferring title of the New York Property to Best, as trustee, for the benefit of Debtor's sister, Nina, and her husband, Mendel Cohen (Nina and Mendel Cohen shall be collectively referred to as the "Cohens"), who, apparently, had been living in the New York property since its purchase. See Answer and Exhibit C to SJ Memorandum.

Father died in October of 2001. Complaint & Answer ¶10. On July 25, 2003, Debtor obtained a Decree of Probate and Letters Testamentary for the Will from the Register of Wills for Philadelphia County. See Defendant's Exhibit D to SJ Memorandum.

On August 4, 2003, less than two weeks after obtaining the Letters Testamentary, Debtor filed his first Chapter 13 bankruptcy case. Bankruptcy Case No. 03-31608, Docket Entry No. 1.[7] In January of 2004, the Chapter 13 Trustee

---

[6](...continued)
Debtor is correct about his Father's mental competence when he signed the document is irrelevant to my ruling regarding subject matter jurisdiction.

[7] In his first bankruptcy case, Debtor listed only one piece of real property, namely the home in which he resides at 8526 Castor Avenue in Philadelphia, Pennsylvania (the "Pennsylvania Property"), on his Schedule A ("Real Property"). While the Pennsylvania property remained in his Father's name, Debtor listed it as belonging to him based on his "[e]quitable interest" in the property as the sole heir to his Father's estate. Bankruptcy Case No. 03-31608, Schedule A. Debtor
(continued...)

moved to dismiss the bankruptcy case contending that Debtor failed to make timely payments under his Chapter 13 plan and that the plan was not feasible.  Bankruptcy Case No. 03-31608, Docket Entry #20. On February 6, 2004, a hearing was held on the motion to dismiss as well as on confirmation of the plan and Debtor's first bankruptcy case was dismissed. Id.,Docket Entry #25.  The case was closed on March 12, 2004.

On February 3, 2005, Debtor filed his second Chapter 13 bankruptcy case.[8] Bankruptcy Case No. 05-11345, Docket Entry #1. On February 21, 2005, he commenced the instant adversary proceeding by filing a Complaint. In the Complaint, Debtor alleges that the Cohens "fraudulently induced" Father to deed the New York Property to Best by having him sign the Trust when: (i)  his "mental faculties" were diminished; (ii) he was incompetent to contract; and (iii) he was incapable of voluntarily executing the Trust because of the Special Power of Attorney.  See Complaint ¶¶1, 9, and 12.  Based on these allegations, Debtor contends that the Trust is "voidable" in favor of Father's estate.  Id. ¶¶13.  Since he

---

[7](...continued)
did not list or otherwise mention the New York Property on his Schedules or Statement of Financial Affairs.

[8] On Schedule A in his current bankruptcy case, the Debtor listed both the Pennsylvania Property (again stating that while the property remains in his Father's name, he possesses an equitable interest in it as his Father's sole heir) and the New York Property.  Explaining the nature of his interest in the New York Property, Debtor stated that he "claims ownership" in the property as his Father's sole heir but that "his sister and her husband claim ownership under a trust executed by [his Father]."  Schedule A.

is the personal representative and sole beneficiary of his Father's estate, Debtor

alleges that title to the New York Property should be quieted in him. Id. ¶¶14-15.

In the first paragraph of the Complaint, Debtor identifies the reason he

commenced this proceeding, stating:

> 1.    This proceeding is brought by the
> Debtor, ... the sole legatee of his late
> father, ... *to quiet title* of [the Property].

Complaint ¶1 (italics added). In the last paragraph of the Complaint and his prayer

for relief, Debtor similarly states:

> 15.    *Title to the Property should therefore
> be quieted in the Debtor*, who intends
> to sell the Property to pay off the
> mortgage under the terms of his
> Chapter 13 Plan.

> WHEREFORE, the Debtor requests that this court will enter *an
> order quieting the title of the Property in him.*

Id. ¶15 & Prayer for Relief (italics added).

Trial on the Complaint was originally scheduled for October 18, 2005.

However, as a result of four amendments to the Pretrial Order, the trial was

continued until July 19, 2006.[9] On May 11, 2006, Best filed a motion to bifurcate the

summary judgment issues in the proceeding between: (i) the probate exception to

---

[9] The Pretrial Order was amended three times pursuant to stipulations of
the parties. The Pretrial Order was amended the fourth time in response to the
a motion by Debtor for an enlargement of time.

federal court jurisdiction; and (ii) other issues.    On May 16, 2006, the motion to bifurcate was granted.

After the SJ Motion was filed, Best filed an expedited motion to extend the dates of the latest Amended Pretrial Order. On June 28, 2006, the expedited motion was granted and the July 19th trial date was cancelled, to be rescheduled upon further court order.  The hearing on the Motion was held and the matter was taken under advisement.

Best contends that summary judgment should be granted because the subject matter of this adversary proceeding falls within the probate exception to federal jurisdiction which the Supreme Court discussed in Marshall v. Marshall, __ U.S. __, 126 S. Ct. 1735 (2006).   Debtor opposes the SJ Motion, arguing that, since his action is a claim for tortious interference with an inheritance as described in Restatement (Second) of Torts §774(B) (1979),[10] the action is outside of the "probate exception" and within the subject matter jurisdiction of this Court. Response at 6.

---

[10] Section 774B states:

> One who by fraud, duress or other tortious means
> intentionally prevents another from receiving from a
> third person an inheritance or gift that he would
> otherwise have received is subject to liability to the
> other for the loss of the inheritance or gift.

Restatement (Second) of Torts §774B (1979).

-7-

## DISCUSSION

I.    Legal Standard for Defense of
      Subject Matter Jurisdiction

A defendant may raise a court's lack of subject matter jurisdiction as a defense at any time under Rule 12(h)(3) of the Federal Rules of Civil Procedure. See Fed.R.Civ.P. 12(h)(3)[11] ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). See also Kaiser Group International, Inc., 399 F.3d 558, 565 (3d Cir. 2005) ("It is well-settled law that subject matter jurisdiction can be challenged at any point before final judgment, even if challenged for the first time on appeal."). However, the defense should not be raised as a basis for summary judgment. See Navios Corporation v. National Maritime Union of America, 359 F.2d 853, 659 (3rd Cir.1966) ("A motion for summary judgment is improper when matters in abatement such as lack of jurisdiction are advanced."). If a bankruptcy court lacks subject matter jurisdiction over a proceeding, it has no authority to decide the proceeding on the merits, Marburger v. Upper Hanover Township, 225 F. Supp.2d 503, 504 (E.D. Pa. 2002) (citing Orthopedic "Bone Screw" Products Liability Litigation, 132 F.3d 152, 155 (3rd Cir. 1997)), and consequently, no authority to grant summary judgment against the plaintiff, Facha v. Cisneros, 914 F. Supp. 1142, 1146 (E.D. Pa.), aff'd, 106 F.3d 384 (3d Cir. 1996). Nevertheless, a motion for summary

---

[11]Rule 12(h)(3) is applicable to this proceeding pursuant to Fed.R.Bankr.P. 7012(b).

-8-

judgment based on subject matter jurisdiction may be treated as a motion under Rule 12(h)(3). See Solomon v. Solomon, 516 F.2d 1018, 1027 (3d Cir. 1975) ("Under Rule 12(h)(3) of the Federal Rules of Civil Procedure (28 U.S.C.), lack of subject matter jurisdiction should be raised and adjudicated by a motion to dismiss, not a motion for summary judgment."); Navios Corporation, 359 F.2d at 659 (*quoting* 6 Moore's Federal Practice ¶56.03, p. 2027 (2d ed. 1953) ("'a motion for summary judgment for lack of jurisdiction over the subject matter may be treated and disposed of as a motion to dismiss'"); Facha, 914 F. Supp. at 1146 (treating motion for summary judgment as a motion to dismiss for lack of subject-matter jurisdiction).

When a defendant contests the subject matter jurisdiction of a court, the party *asserting subject matter jurisdiction has the burden of proving its existence.* Carpet Group International v. Oriental Rug Importers Association, Inc., 227 F.3d 62, 69 (3d Cir. 2000). Since Best has asserted a factual as opposed to a facial challenge to this Court's subject matter jurisdiction, I may consider matters outside of the pleadings in ruling on his Motion. See id. ("When a defendant attacks subject matter jurisdiction "in fact," as opposed to an attack on the allegations of the complaint, the Court is free to weigh the evidence and satisfy itself whether it has the power to hear the case."). I have relied upon this principle in determining the relevant facts as set forth above. See supra n.4.

II.    Whether Debtor's Claim is an Action for
Tortious Interference with an Inheritance

First we shall turn to the question of whether this matter can be recharacterized so that it is outside the scope of the probate exception. Debtor contends that his claim is not within the probate exception because it "falls squarely" within the definition of a claim for tortious interference with inheritance, as set forth in the Restatement of Torts (Second) §774B, which the Supreme Court specifically ruled in <u>Marshall</u> is the type of claim that falls "outside of the narrow scope of the probate exception." Response at 6. Even were we inclined to torture the Complaint to read it as sounding in tort, this contention would be erroneous.

Pennsylvania law does not provide for recovery under a claim for tortious interference with contract "on the basis of *inter vivos* transfers alleged to diminish an eventual bequest." <u>Estate of Cletus J. Hollywood v. First National Bank of Palmerton</u>, 859 A.2D 472 (Pa. Super. 2004). Rather, Pennsylvania law limits the "parameters" of such claims to "instances involving demonstrable interference with the testamentary scheme the decedent had sought to create by making changes in an existing will." <u>Estate of Cletus J. Hollywood v. First National Bank of Palmerton</u>, 859 A.2D 472 (Pa. Super. 2004). As the Third Circuit noted in <u>Golden</u>, <u>supra</u>, the elements in Pennsylvania for a claim of tortious interference with inheritance are the following:[12]

_____

[12] Neither party contends that any state law other than Pennsylvania
(continued...)

-10-

    (1)    The testator indicated an intent to change his will to provide a described benefit for plaintiff;

    (2)    The defendant used fraud, misrepresentation or undue influence to prevent execution of the intended will;

    (3)    The defendant was successful in preventing the execution of the new will; and

    (4)    But for the Defendant's [sic] conduct, the testator would have changed his will.

382 F.2d at 364 (quoting Cardenas v. Schober, 783 A.2d 317, 326 (Pa. Super. 2001)) (correction in 3rd Circuit decision).  See also Arena v. McShane, 150 Fed. Appx. 165, 166-67 (3d Cir. 2005) (quoting Cardenas, 783 A.2d at 326 (citing Marshall v. De Haven, 209 Pa. 187, 58 A. 141, 142 (1904)).  Based on these elements, Pennsylvania law requires a plaintiff stating a claim for alleged interference with inheritance to "demonstrate" that "the decedent has sought to make changes to his will to plaintiff's benefit, and that the defendant, through means of fraud, misrepresentation, or undue influence thwarted the decedent's intent." Estate of Cletus J. Hollywood, supra, 859 A.2d at 478.   Based on the Complaint's allegations, Debtor has not, and cannot, state such a claim here.

---

[12](...continued)
applies to the Debtor's action.  Rather, both parties cite to Pennsylvania law in support their respective positions.  See Marshall v. Marshall, 275 B.R. 5, 50 n.3 (C.D. Cal. 2002) (assuming that the law of Texas applied to the parties' dispute because neither party contended that anything but such law applied), adopted as modified by, 275 B.R. 5 (C.D. Cal. 2002), vacated and remanded, 392 F.3d 1118 (2004), reversed and remanded, 126 S. Ct. 1735, ___ U.S. ___ (2006).

III.    The Supreme Court's Decision in *Marshall v. Marshall*
on the Probate Exception to Federal Jurisdiction

Best supports his contention that subject matter jurisdiction is lacking by citing

the recent decision of <u>Marshall v. Marshall</u>, <u>supra</u>, wherein the Supreme Court

discussed the contours of what it labeled as the "narrow" probate exception to

federal jurisdiction.  126 S.Ct. at 1744.  The Supreme Court ruled that the Ninth

Circuit Court of Appeals had interpreted the exception too broadly when it held that

the exception prevented the bankruptcy court from deciding a claim for tortious

interference in an adversary proceeding before it.

The debtor in <u>Marshall</u> was Vickie Lynn Marshall ("Widow"), also known as

Anna Nicole Smith, who survived her very wealthy older husband, J. Howard

Marshall, II. <u>Id</u>. at 1741.  One of her husband's sons (the "Son") was the beneficiary

of his estate.  <u>Id</u>. at 1742.  While her husband's estate was subject to ongoing

proceedings in the probate court caused by various claims to his fortune, the Widow

filed a Chapter 11 bankruptcy case.  <u>Id</u>.  The Son filed a proof of claim against the

Widow for allegedly defaming him; she answered his claim and asserted a

counterclaim against him, including a claim that he had tortiously interfered with a

gift she had expected from her late husband.[13] <u>Id</u>.

_____

[13] Since Widow included a counterclaim in her objection to Son's
defamation claim, it became an adversary proceeding pursuant to Fed.R.Bankr.P.
3007. <u>Id</u>.

-12-

The bankruptcy court granted summary judgment in favor of the Widow on the Son's claim and, following a trial on the merits, entered final judgment in her favor on her tortious interference claim. Id. In a post-trial motion and on appeal, the Son claimed lack of subject matter jurisdiction. Neither the bankruptcy court nor the district court ruled in his favor on this issue. Id. Like the bankruptcy court,[14] the district court also granted judgment on the Widow's claim in her favor and against the Son. Id. at 1743-44. The Son subsequently appealed to the Ninth Circuit.

On appeal, the Ninth Circuit reversed, concluding that the probate exception barred federal jurisdiction. Id. at 1744. It reasoned that "a claim falls within the probate exception if it raises 'questions which would ordinarily be decided by a probate court in determining the validity of the decedent's estate planning "instrument," whether those questions involve 'fraud, undue influence [or,] tortious interference with the testator's intent.'" 126 S.Ct. at 1744 (quoting Marshall v. Marshall, 392 F.3d at 1118, 1133 (9th Cir. 2004)).

In reversing the Ninth Circuit and clarifying the limits of the probate exception, the Supreme Court interpreted the following two paragraphs from a decision which,

---

[14] The district court held that the bankruptcy court did not have core jurisdiction to enter a final judgment on the Widow's claim so it treated the bankruptcy court's decision as proposed findings of fact and conclusions of law. Marshall v. Marshall, 275 B.R. 5,10 (C.D. Cal. 2002), vacated and remanded by 392 F.3d 1118 (9th Cir. 2004), reversed and remanded by ___ U.S. ___, 126 S.Ct. 1735 (2006).

-13-

despite its having been issued in 1946, was the Supreme Court's "most recent

pronouncement of the probate exception:"

> It is true that a federal court has no jurisdiction to probate a will or administer an estate ... But it has been established by a long series of decisions of this Court that federal courts of equity have jurisdiction to entertain suits "in favor of creditors, legatees and heirs" and other claimants against a decedent's estate "to establish their claims" *so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court.*
>
> Similarly, while a federal court may not exercise jurisdiction to disturb or affect the possession or property in the custody of the estate court, ... it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court.

Markham v. Allen, 326 U.S. 490, 494 (1946) (citations omitted) (italics added).

The Supreme Court began its interpretation of these paragraphs by focusing

on the first paragraph which it observed was *not* "a model of a clear statement."

Marshall, 126 S. Ct. at 1747-48 (italics added).  Explaining this paragraph, the

Supreme Court stated: "[F]ederal courts have jurisdiction to entertain suits to

determine the rights of creditors, legatees, heirs, and other claimants against a

decedent's estate 'so long as the federal court does not *interfere with the probate

proceedings.'"* Id. at 1748 (italics added by Supreme Court) (*quoting* Markam v.

Allen, 326 S. Ct. at 494). Recognizing that lower courts had long been puzzled over

the meaning of the phrase "interfere with the probate proceedings" and, consequently, have read the "words to block federal jurisdiction well beyond probate of a will or administration of a decedent's estate," the Supreme Court explained that the phrase proscribes "'disturb[ing] or affect[ing] the possession of property in the custody of a state court." Marshall, 126 S. Ct. at 1748 (quoting Markham v. Allen, 326 U.S. at 494). Noting that this interpretation "renders the first-quoted passage in part redundant," the Supreme Court reasoned that "redundancy is preferable to incoherence." Id. at 1748. Restating its point, the Supreme Court stated that the "'interference language'" is "essentially a reiteration of the general principle that, when one court is exercising in rem jurisdiction over a res, a second court will not assume in rem jurisdiction over the same res." Id.

The Supreme Court then summarized the confines of the probate exception, instructing:

> Thus, the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

Id. Applying these principles of the probate exception, the Supreme Court concluded that the Widow's claim was not within the probate exception because it did not "involve the administration of an estate, the probate of a will, or any other purely probate matter." Id. In so concluding, the Supreme Court specifically relied

-15-

upon the following four characteristics of the Widow's claim: (i) the claim alleged a widely recognized tort under the Restatement (Second) of Torts § 774B (1979); (ii) it sought an *in personam* judgment against the Son rather than the probate or annulment of a will; (iii) it did not seek to reach a *res* in the custody of a state court; and (iv) it required no special proficiency to handle. Id. at 1748-49.

The Supreme Court also addressed one additional major point which is significant here. It emphasized that  state legislation cannot impair federal jurisdiction.  On this point, the Supreme Court noted that it had previously held that "the jurisdiction of the federal courts, 'having existed from the beginning of the Federal Government, [can]not be impaired by subsequent state legislation creating courts of probate.'" Id. at 1749 (*quoting* McClellan v. Carland, 217 U.S. 268, 281 (1910)(upholding federal jurisdiction over action by heirs of decedent, who died intestate, to determine their rights in the estate).  This observation by the Supreme Court also was noted by the Third Circuit in Golden v. Golden, 382 F.3d 348 (3d Cir. 2004), which also focused on the probate exception.

At dispute in Golden was a will that transferred all of the decedent's property to a trust which she created while she was alive. 382 F.3d at 352-53. She named herself as the trustee; upon her death, her son became the sole trustee. Id. Under the terms of the trust, the trust corpus was, upon her death, to distributed in three equal shares to her beneficiaries. Id. However, while she was bedridden and under hospice care, she purportedly executed the addendum revising her testamentary

scheme to increase the legacy granted to the son who was named as the trustee and decrease the legacy granted to the other two beneficiaries. Id.

The trust in Golden was an inter vivos trust since it was created during the decedent's lifetime rather than by a will. See Blacks Law Dictionary 826-27 (7th ed. 1999) (definition for "inter vivos"). See also 20 Pa.C.S.A. § 711(3) ("'Inter vivos trust' means an express trust other than a trust created by a will, taking effect during the lifetime or at or after the death of the settlor.");[15] Peter Nicoulas, *Fighting the Probate Mania: A Dissection of the Probate Exception to Federal Court Jurisdiction*, 74 S. Cal. L. Rev. 1479, 1492-93 (September, 2001) (explaining that an inter vivos trust is "created and take[s] effect during the settlor's lifetime" whereas a testamentary trust does not take effect "until the settlor dies."). In the same vein, the trust at issue in the instant case is an inter vivos trust; it was executed by Father and took effect during his lifetime. Most importantly, however, the Trust does not provide for the distribution of the Trust property upon the death of either the grantor, Father, or the Beneficiaries, the Cohens. Exhibit C to SJ Motion.

---

[15] Section 711(3) specifically recognizes that the term "inter vivos trust" does not include "a resulting or constructive trust created by operation of law." 20 Pa.C.S.A. §711(3). As one of his defenses to Debtor's claim that the trust is not valid, Best asserts that the a constructive trust of the New York Property exists in the Cohen's favor. Since constructive trusts are not even included in the term "inter vivos" under §711(3), this defense has not been legislated as being in the orphan's court jurisdiction. Neither party has argued to the contrary.

The relevant issue in <u>Golden</u> was whether the probate exception applied to the appellants' action which sought, through various theories, to challenge the distribution of assets from the decedent's estate. <u>Golden</u>, <u>supra</u>, 382 F.3d at 357. The parties presented categorical arguments on this issue. <u>Id</u>. at 360. The appellant argued that actions involving inter vivos trusts are never subject to the probate exception because it only applies to wills and not to trusts regardless of whether "the trust operates as a will, distributing the corpus upon the death of the settlor." <u>Id</u>. at 359. The appellee disagreed, contending that, under Pennsylvania law, the probate exception *per se* applied to all of the appellant's claims because 20 Pa.C.S.A. §711(3) vests the Orphan's Court with jurisdiction to administer and oversee actions seeking to reform inter vivos trusts. <u>Id</u>. at 359-60. Section 711(e) of Pennsylvania's statutory law provides, in pertinent part, that jurisdiction over the "administration and distribution of the real . . . property of inter vivos trusts and the reformation or setting aside of such trusts" resides in the Orphan's Court. <u>See</u> 20 Pa.C.S.A. § 711(3).[16]

---

[16] Section 711(3) states:

> [T]he jurisdiction of the court of common pleas over the following shall be exercised through its orphan's court division:
>
> * * *
>
> (3) Inter vivos trusts. – The administration and

(continued...)

The Third Circuit rejected both of the parties' viewpoints. Id. at 359-60. The Third Circuit ruled that actions involving inter vivos trusts are not categorically *outside of* the probate exception, but also that the probate exception does not apply categorically to all claims involving the reformation of inter vivos trusts. Id. In so concluding, the Third Circuit opined that a "state's interest in managing *all* challenges addressing an estate res located in that state or with which the state has some meaningful connection . . . is no less compelling if the res is distributed by trust rather than by will." Id. at 359 (emphasis in original). While the Third Circuit's reference to "*all* challenges addressing an estate res" now would be overly broad given the Supreme Court's clarification in <u>Marshall</u> of the narrow nature of the probate exception, the Third Circuit's rationale, that causes of action involving trusts which distribute estate assets are treated under the probate exception in the same way as actions involving wills, remains viable. Id. at 359.

In rejecting the appellee's "opposite categorical position" that the probate exception applied to all of the appellants' claims under §711(3), the Third Circuit explained that the fact that a trust is involved does not automatically render the

---

[16](...continued)
distribution of the real and personal property of inter vivos trusts, and the reformation or setting aside of any such trusts[.]

20 Pa.C.S.A. §711(3).

probate exception applicable to the matter even if a state has legislated otherwise.

Id. at 359-60. On this point, the Third Circuit explained:

> A state cannot expand the probate exception – and defeat
> otherwise proper federal jurisdiction over a matter – simply
> by vesting exclusive authority over otherwise *in personam*
> actions in state court. That is to say, if a claim is
> otherwise outside the scope of the probate exception, a
> federal court is not divested of jurisdiction simply because
> the state places that sort of claim in state probate court.

Id. at 360 (citations omitted). Based on the foregoing analysis, the Third Circuit

concluded that since the trust in the matter before it constituted a will substitute, it

was necessary to examine the substance of each of the appellant's claims to

determine whether the probate exception was applicable to it. Id.

Focusing on the appellants' claims of undue influence, forgery and fraud, the

Third Circuit ruled that they were within the probate exception because they "would

interfere with the already-completed probate proceedings[.]" Id. at 360-63. In so

holding, the Third Circuit reasoned that when the Register of Wills probated the

decedent's will, the Orphan's Court implicitly determined that the will, the trust, the

addendum and their combined distributive scheme were enforceable and valid;

therefore, a ruling in appellants' favor on these claims (for undue influence, forgery

and fraud) would strike at that determination of validity and would be inconsistent

with the Orphan Court's jurisdiction. Id. The Third Circuit also examined the

appellants' claim for breach of fiduciary duty by the executor, determining that it too

was within the probate exception because it related to the administration and

-20-

management of the decedent's estate. Id. at 361-62. Lastly, the Third Circuit

considered appellants' *in personam* claims for slander and tortious interference with

inheritance. Id. at 363-66. The Third Circuit ruled that these claims did not fall within

the probate exception because under state law they could be decided in appellants'

favor *without* directly contradicting the probate court's determination that the will, the

trust and the addendum were valid. Id. In the instant matter, however, the trust is

not a will substitute, nor will a determination regarding its validity interfere with any

probate proceedings as set forth below.

IV.    Application of the Probate
       Exception to the Instant Case

According to the Complaint, the Cohens "fraudulently induced" Father to deed

the New York Property to Best by having him sign the Trust when he was mentally

and legally unable to do so. Complaint ¶¶ 1, 9, and 12. As a result, Debtor alleges,

the Trust is "voidable" in favor of Father's estate and, since Debtor is the sole

beneficiary of the estate, title to the property should be quieted in him. Id. ¶¶ 13-15.

In short, Debtor seeks to have this Court determine that the Trust is invalid and that

title to the New York Property should have vested in him.

Resolution of the Debtor's contention that the Trust is invalid will not "disturb

or affect the possession of property in the custody" of the Orphan's Court. See

Markham v. Allen, 326 U.S. at 494. The *res* of the Trust, namely the New York

Property, has *never* been in the custody of the Orphan's Court because it is not an

-21-

asset that was ever part of the Father's estate. See Abercrombie v. Andrew College,
__ F. Supp.2d ___, 2006 WL 176857, at *8 (S.D.N.Y. June 15, 2006) (reasoning that
"unless and until some judicial authority" accepted the plaintiff's objections to the
validity of an inter vivos gift deeding the property at issue to the defendant, the
property was not party of the decedent's estate but belonged to the defendant);
Hoffman v. Sumner, 2006 WL 1444677, at *2 (N.D. Ill. May 18, 2006) (in the event
plaintiffs' theory of stock transfer was correct, "the stock shares are not currently an
asset of [the decedent's] estate, so determining plaintiffs' and defendants' rights as
to the shares would not interfere with the state court's administration of [the
decedent's] estate."). Nor will the resolution of this matter interfere with the probate
proceedings. Neither the Debtor nor Best is challenging the validity of the Will or the
designation of Debtor as the sole beneficiary under the Will. Indeed, Debtor's claim
relies upon the validity of the Will. Debtor's challenge is to the validity of the Trust.
The Orphan's Court has never ruled on this issue or had this issue or the Trust and
its asset before it. Therefore, a ruling on the matter cannot interfere with the probate
proceedings. See Abercrombie, supra, 2006 WL 1716857, at *8 (where purpose of
the lawsuit was to increase assets of the estate, the lawsuit was outside the bounds
of the probate exception). Moreover, no "special proficiency" is required to decide
the Trust's validity. Bankruptcy Courts routinely determine challenges to property
claimed by debtors under 11 U.S.C. §541. Consequently, the probate exception
does not bar this Court from exercising jurisdiction over whether the Trust is valid.

Furthermore, federal jurisdiction over this matter is not proscribed by the Pennsylvania legislature's enactment of 20 Pa.C.S.A. §711. While this provision purports to vest the Orphan's Court in Pennsylvania with authority over the administration and distribution of real property of inter vivos trusts and the reformation and setting aside of such trusts, state legislation cannot decrease federal jurisdiction when it exists.

V.    Whether this Court has Authority to
      Quiet Title to the New York Property
      or Grant Other Appropriate Relief

In his prayer for relief, Debtor requests this Court to enter an order quieting title to the New York Property in his name. See also Complaint ¶¶ 1, 15. Neither of the parties have cited any case law on whether this Court has authority to render such relief.[17]    I shall not decide the issue at this point since it has not been

---

[17] Rule 7070 of the Federal Rules of Bankruptcy Procedure provides:

> Rule 70 F.R.Civ.P. applies in adversary proceedings and the court may enter a judgment divesting the title of any party and vesting title in others whenever the real or personal property involved is within the jurisdiction of the court.

Fed.R.Bankr.P. 7070. Since I have subject matter jurisdiction over Debtor's challenge to the Trust and, therefore, over the res of the Trust, I may have authority under Rule 7070 to divest Best of the title to the property and vest it in the Debtor. However, even if Debtor is entitled to other relief, his failure to request it does not bar this Court from granting it to him. Rule 54(c) of the Federal Rules of Civil Procedure, incorporated herein pursuant to Fed.R.Bankr.P. 7054, states, in pertinent part:

(continued...)

-23-

determined that Debtor is entitled to any relief. Best opposes Debtor's claim that the

Trust is not valid.    He also contends, as an alternative to this defense, that a

constructive trust exists in the Cohens' favor over the New York Property. As I have

already determined, these issues are not subject to the probate exception. See n.15

& Part IV. Moreover, in the event that I resolve either of these issues in Best's favor,

this adversary proceeding will conclude without the need for any further action.

---

[17](...continued)
> Except as to a party against whom judgment is entered
> by default, every final judgment shall grant the relief to
> which  the party in whose favor it is rendered is entitled,
> even if the party has not demanded such relief in the
> party's pleadings.

Fed.R.Civ.P. 54(c). See USX Corporation v. Barnhart, 395 F.3d 161, 165 (3d Cir.
2004) (quoting Fed.R.Civ.P. 54 advisory committee's note to 1937 adoption)
(observing that the advisory committee's note for Rule 54(c) explains that subpart
(c) of the rule "'makes clear that a judgment should give the relief to which the
party is entitled, regardless of whether it is legal or equitable or both.'"). See also
Thomas v. Board of Trustees of International Union of Operating Engineers,
Local 542, 1998 WL 334627, at *12-13 (June 24, 1998) (even though plaintiff had
requested relief which he could not be lawfully granted, summary judgment would
be granted in his favor on a claim for restitution under Rule 54(c); Rued v. Aeriest
Bank, 1991 WL 25565, at *4  (E.D. Pa. Feb. 25, 1991) (quoting Stanton v.
Tarantino, 637 F. Supp. 1051, 1065 (E.D. Pa. 1986))("Despite the plaintiff's
failure to demand the usual relief granted in this kind of case, 'this Court may
grant such relief if appropriate'" under Rule 54(c)).

## V. Summary

Based on the foregoing discussion, Best's Motion shall be denied. An

Order consistent with this Memorandum Opinion shall be entered.

_____
JEAN K. FITZSIMON
United States Bankruptcy Judge

Dated: August 18, 2006

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| ERIC E. POWELL, | : | Bankruptcy No. 05-11345JKF |
| | : | |
| Debtor. | : | |

| | | |
|---|---|---|
| ERIC POWELL, | : | Adversary No. 05-0120 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JAY BEST, TRUSTEE, | : | |
| | : | |
| Defendant. | : | |

## ORDER

**AND NOW**, this 18th day of August, 2006, upon consideration of Defendant's Motion for Summary Judgment ("Motion") and after hearing with notice, and for the reasons set forth in the accompanying Memorandum Opinion, it is hereby **ORDERED** and **DECREED** that:

      1.    The Motion is **Denied**; and

2.     The parties have fourteen (14) days from the date of this Order to file any additional motions for summary judgment.

3.     In the event that neither party files a motion for summary judgment, the parties shall file a Joint Pretrial Statement on or before September 8, 2006, and a pretrial conference shall be scheduled after this date.

_____

JEAN K. FITZSIMON
United States Bankruptcy Judge

<u>Copies to</u>:

Counsel for Plaintiff/Debtor
David A. Scholl, Esquire
6 St. Albans Avenue
Newtown Square, PA 19073

Counsel for Defendant
Brian R. Mildenberg, Esquire
Mildenberg and Stalbaum, P.C.
1845 Walnut Street, 22nd Floor
Philadelphia, PA 19103

William C. Miller, Trustee
PO Box 40119
Philadelphia, PA 19106-0119